(7 Misc. Rep. 278.)

### PEOPLE ex rel. MULDOON v. HAYDEN, Police Commissioner.

(City Court of Brooklyn, General Term. February 26, 1894.)

1. DISCHARGE OF POLICEMAN—REVIEW OF DECISION.

    The proceedings of police commissioners in discharging a policeman will not be reversed on certiorari unless it appears that defendant did not have a fair trial, or that the decision was against the weight of the evidence.

2. SAME—EVIDENCE.

    On the hearing of charges against a policeman for misconduct at a voting place, the commissioners may inquire as to the conduct of the policeman during the entire day, as such evidence tends to show whether the alleged misconduct was a mistake, or whether it was willful and intentional.

Certiorari by John F. Muldoon to review the decision of Henry I. Hayden, police commissioner of the city of Brooklyn, in dismissing relator from the police force. Affirmed.

Argued before CLEMENT, C. J., and VAN WYCK and OSBORNE, JJ.

Dailey, Bell & Crane, for relator.
Francis A. McCloskey, for respondent.

CLEMENT, C. J. The relator was dismissed from the police force of this city after a trial and conviction on four charges for violation of the rules of the department, alleged to have taken place on election day in the twelfth election district of the First ward, and which charges were substantially as follows: (1) that he struck a man with his fist on the sidewalk in front of the polling place; (2) that he said to him, at the time, "If you come here again, I'll smash your face in;" (3) that, at the same time and place, he failed to protect a citizen, Thomas G. Shearman, who was assaulted by an unknown party, within his view; (4) that he failed to arrest certain parties for violation of the election laws, when requested to do so by Walter S. Brewster, who was the chairman of the board of inspectors in said district, during the time the

polls were open. According to the return, he was convicted on each and every charge.

In passing upon the proceedings before the police commissioner, we must recollect that he is not a lawyer, and, though he acts, in a certain sense, judicially on the trial of police officers, we must not reverse for trifling errors, but should look at the whole case, and see if the officer has had a fair trial, and ascertain that no injustice has been done to him. Judge McAdam well said, in the case of People v. McLean, 1 Misc. Rep. 463, 467, 21 N. Y. Supp. 625:

"The proceedings of the commissioners while acting judicially are to be reviewed with liberality, with a view of sustaining, rather than reversing, their judgments. This is necessary, for the reason that the commissioners are, to a large extent, responsible for the efficiency of the force under their control, and their methods of discipline should be interfered with only in extreme cases, where the charges have been unsupported by evidence, or the action of the board is clearly arbitrary, and not in accordance with legal requirements."

The decisions of the court of appeals fully sustain the rule above quoted. Judge Miller wrote as follows, as to the powers of police commissioners, in the case of People v. Board of Police Com'rs, 93 N. Y. 97, 102:

"Their action must be considered, having in view the special powers conferred, and the purposes for which their organization was intended, and not confined by the application of strict legal rules which prevail in reference to trials and proceedings in courts of law."

In the case of People v. Board of Commissioners of Police, 98 N. Y. 332, 334, Judge Earl held as follows:

"This was not a common-law trial, with the incidents and common-law rights pertaining to such a trial; nor, strictly speaking, was it a trial before a court. It was an investigation required by the statute, in such cases, to furnish information to the board upon which they can act in disciplining any member of the police force."

The rule is well established that the courts, in reviewing by certiorari the proceedings of police or fire commissioners, are only called upon to reverse (1) if the accused, on the whole case, did not have a fair trial; (2) on the facts, if the decision was against the weight of evidence. Code, § 2140. On the latter question many authorities can be cited. People v. Board of Police Com'rs, supra; People v. MacLean, (Sup.) 13 N. Y. Supp. 685; People ex rel Costello v. McClave, (Sup.) 15 N. Y. Supp. 221; People ex rel Gardner v. McClave, Id. 244.

After a careful examination of the whole case, we are satisfied that the relator had a fair trial. The commissioner had the right, in our opinion, to inquire as to the conduct of the officer at the polling place during the entire day. The commissioner was bound to ascertain whether Muldoon was endeavoring to aid parties in the violation of the election laws, or whether he was honestly endeavoring to preserve order and enforce the laws. Muldoon did not arrest the party who attempted to vote, and who had forgotten his name,—the person who is called in the record "the man with holes in his hat,"—and testified that he did not see him,

though he was in the polling place at the time.    If Muldoon had conducted himself properly the entire day except on that occasion, the commissioner could well hold that, in the excitement, the officer made a mistake, which was not willful and intentional; but if it appeared that he permitted disorder at the polling place nearly all day, and that he allowed violations of the election laws to go on without making arrests during the same time, such evidence would tend strongly to show that, on the charges on which he was tried, he was guilty, not technically, but that he willfully aided in the violation of the election laws, and willfully permitted disorder at the polls.    The hearing before the commissioner was an investigation of charges, and it was the duty of the commissioner to make such investigation full and complete.

The remaining point of the counsel for the relator is that the decision of the commissioner was against the weight of evidence. We think that there was ample evidence, on each charge, to uphold the decision of the commissioner.    The testimony given by the relator was evasive, and his explanation of his conduct is difficult to understand.    Take his testimony at folio 143:

"There were four or five Republicans standing in the doorway, and obstructing it.   Nothing I would say would get them to move, and Mr. Brewster had to come down, and to talk to them, before they would go."

Muldoon thus stated that he, as a police officer, could not keep the door clear, and that the chairman of the board of inspectors had to ask persons not to block up the door.    The claim of Muldoon that he could not arrest unless some one went to the station house with him, to make a complaint, is frivolous.    If he saw persons violating the election laws, or disorderly, or persistently blocking up the door of the polling place, it was his duty to arrest such parties, and make the complaint himself; and he could not turn his back, and claim that he did not see the offense committed, and decline to make the arrest unless the complainant went to the station house with him.    We have examined the record, and every point raised by the counsel for the relator, and can find no reason to disturb the finding of the police commissioner.    Proceedings affirmed, with $50 costs and disbursements.    All concur.